Nemo Linoleum & Tile Shop, Inc. v. Commissioner.
Nemo Linoleum & Tile Shop, Inc. v. Commissioner
Docket No. 22862.
United States Tax Court
T.C. Memo 1954-132; 1954 Tax Ct. Memo LEXIS 115; 13 T.C.M. (CCH) 820; T.C.M. (RIA) 54238; August 19, 1954, Filed Albert B. Koorie, Esq., 914 Carondelet Building, 226 Carondelet Street, New Orleans, La., for the petitioner. Jackson L. Bailey, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The respondent determined deficiencies for the year 1945 as follows: Deficiency
Penalty
Income tax
$2,037.29
None
Declared value excess-
profits tax
104.27
None
Excess profits tax
4,645.21
$1,161.30
The following issues are presented: (1) Has the respondent properly determined petitioner's taxable income for *116 the year 1945? (2) Is petitioner liable for the penalty for failure to file an excess profits tax return for the taxable year 1945? (3) Is petitioner entitled to a net operating loss deduction for 1945 as a carry-back from the year 1946? Findings of Fact Nemo Linoleum & Tile Shop, Inc., is a Louisiana corporation with its principal office and place of business in the City of New Orleans. Petitioner was engaged in the business of selling electric fans, rugs, linoleum, hardware, paint, and sundries. On March 15, 1946, petitioner filed with the collector of internal revenue for the district of Louisiana, Form 1120, Corporation Income and Declared Value Excess-Profits Tax Return for 1945. On the Form 1120 filed with the collector for the year 1945 petitioner disclosed income and deductions as follows: Gross sales
$43,612.77
Cost of goods sold
28,989.81
Gross profit
$14,622.96
Miscellaneous income
300.00
Total
$14,922.96
Operating Expense: Compensation of officers
$ 100.00
Salaries and wages
3,089.41
Rent
1,170.00
Taxes
214.22
Advertising
70.94
Other deductions
7,738.75
Total
12,383.32
Net Income
$ 2,539.64
The books of petitioner *117 for 1945 indicate sales in the amount of $39,358. On the Form 1120 filed with the collector, sales are indicated as $43,612.77; in the petition it was alleged that petitioner's sales amounted to $50,874.55. On the form filed with the collector petitioner's net income for 1945 is set forth as $2,539.64; in the petition it was alleged that petitioner's net income for 1945 was $6,798.23 Anthony Ranzino was president of petitioner and he and Mrs. Joseph Ranzino, his daughter-in-law, actively managed the business in 1945. A part-time bookkeeper was also employed by petitioner. However, he did not make all the entries in petitioner's books and the entries he made were based on cancelled checks and from information furnished by Ranzino and Mrs. Joseph Ranzino. Mrs. Joseph Ranzino also participated in keeping petitioner's books. She made notations of sales in a small notebook other than the sales journal. The small notebook was not introduced in evidence. During the year 1945 petitioner had a bank account at the Mid-City Branch, Hibernia National Bank, at New Orleans, and in that year deposits in the amount of $86,420.15 were made in petitioner's account. Petitioner's books and records *118 were not adequate and the interested parties did not cooperate with the examining agent. To determine petitioner's sales in 1945 the agent examined petitioner's bank deposits in the Hibernia National Bank. The agent eliminated from total deposits certain nonincome items consisting of loans and transfers; these items amounted to $8,589.70. It was then determined that the balance of deposits represented sales. To adjust for credit sales, the agent added to the deposits an amount of $1,746.32, representing a balance of accounts receivable. As a result of the agent's examination the respondent determined deficiencies and a penalty for the year 1945. In the statutory notice mailed to petitioner, respondent computed petitioner's net income as follows: Sales
$78,057.37
Cost of goods sold: Inventory at beginning
of year
$10,266.87
Purchases
52,458.85
Total
$62,725.72
Inventory at end of year
11,320.07
51,405.65
Gross profit on sales
$26,651.72
Operating expenses: Sundry expenses
$ 9,502.01
Interest expense
387.58
Repairs
382.66
Depreciation
267.36
Loss on sale of truck
157.60
Capital stock tax
125.00
10,822.21
Net profit
$15,829.51
*119 In the year 1945 Ranzino owned three apartments and a store. In that year each apartment rented for $50 a month, and the store for $60 a month. The rent payments were deposited in petitioner's account in the Hibernia National Bank. Petitioner received certain loans which were also deposited in this bank account. On June 18, 1945, petitioner redeposited a check which had been returned for insufficient funds. Petitioner's sales as determined from adjusted bank deposits and accounts receivable amounted to $73,100.87. Petitioner is liable for the 25 per cent penalty for failure to file an excess profits tax return for the year 1945. Opinion The first issue is whether respondent correctly determined petitioner's income for 1945. While petitioner does not agree with respondent's ultimate determination of net income, petitioner has directed its argument against respondent's method of determining income. Petitioner contends that its income should be determined from its books and that respondent has improperly resorted to bank deposits and cancelled checks as a basis for determining net income. We have carefully examined petitioner's books that were submitted in evidence, and we *120 find that the books are not adequate to determine petitioner's income. Page one of the journal starts with April 2, 1945. We know that petitioner was in business during the first three months of 1945, and this omission of three months can not be ignored. Petitioner's sales figures were kept in two different books, but one was not offered in evidence. These facts point up the inadequacy of petitioner's records. Further, the unexplained variance between the income statement as reported on Form 1120 for 1945, and the income as stated in the petition is further evidence that the books are not adequate. It is our conclusion that petitioner's books do not clearly reflect its income for 1945. Therefore, it was proper for respondent, under section 41, I.R.C., to use some other method which "in the opinion of the Commissioner does clearly reflect the income." See also section 54(a). In this proceeding, where the respondent must resort to some method other than petitioner's books to determine income, the burden of proving respondent wrong is upon the petitioner. Respondent determined petitioner's income from an examination of petitioner's bank deposits and cancelled checks. *121 Since petitioner regularly deposited in the Hibernia National Bank the receipts from sales, respondent determined that the total deposits, with adjustments for non-income items and credit sales, would represent total sales. See Louis Halle, 7 T.C. 245, affd., 175 Fed. (2d) 500. It is undisputed that $86,420.15 was the total sum deposited in 1945, but petitioner argues that respondent has not made sufficient adjustments, principally, for loans received, or for certain rent payments received. The money from both sources was allegedly deposited in petitioner's account. We believe that petitioner has proved it is entitled to certain additional adjustments. The record indicates that rent payments, from property not owned by petitioner, were deposited in petitioner's account. These rent deposits did not represent sales income, or other income to petitioner, and, accordingly, respondent's determination of sales should be adjusted. From the record we have ascertained that petitioner received certain loans over and above those used in respondent's determination. There is also need for an adjustment for a duplicate deposit. We have found that these additional adjustments *122 aggregate $4,956.50. In making our findings we have considered the testimony and have carefully examined petitioner's books, but the record is not sufficiently clear and convincing for us to sustain all of petitioner's contentions, especially those contentions relating to alleged loans. Therefore, respondent's determination for total sales, reduced by $4,956.50, must be sustained. It should be pointed out that petitioner made no argument to the propriety of respondent's determination of the cost of goods sold, or operating expenses, even though respondent's figures differed from those originally reported by the petitioner. Therefore, respondent's determinations of $51,405.65 as cost of goods sold and $10,822.21 as operating expenses are also sustained. The second issue was precipitated by respondent's determination that a 25 per cent penalty was proper for petitioner's failure to file an excess profits tax return for 1945. Sections 291(a) and 729(a). The burden of proof is upon petitioner to show that its failure was due to reasonable cause and not due to wilfull neglect. Petitioner has not attempted to offer any explanation or other evidence with respect to this issue. Therefore, *123 we must sustain the respondent. The third issue arises from the allegation of certain facts in the petition. Among those facts as alleged was "That it [petitioner] had a loss carry-back for the calendar year 1946 of $3,862.69." Respondent denied this allegation. Petitioner, however, offered no evidence or argument in support of its position. Therefore, respondent is sustained. Decision will be entered under Rule 50.